1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LISA REINGOLD, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>  v.<br><br>AMAZON.COM SERVICES LLC, a Delaware corporation,<br><br>    *Defendant*. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY DEMAND |

Plaintiff Lisa Reingold ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated. Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

<u>**NATURE OF THE ACTION**</u>

1.      This is a class action suit brought against Amazon.com Services LLC, d/b/a Amazon, ("Defendant" or "Amazon") for violating the California Digital Property Rights Transparency Law, California Business & Professions Code § 17500.6. Amazon "sells" and rents movies and tv shows on its streaming platform, Amazon Prime Video ("APV"),[1] through its website, Amazon.com. On its website, Defendant tells consumers the option to "buy" or "purchase" digital copies of these audiovisual works. But when consumers "buy" digital versions of audiovisual works through Amazon's website, they do not obtain the full bundle of sticks of rights we traditionally think of as owning property. Instead, they receive "non-exclusive, non-transferable, non-sublicensable, limited license" to access the digital audiovisual work, which is maintained at Defendant's sole discretion.[2]

2.      When one "buys" a hard-copy DVD of the Director's Cut of *Django Unchained*, they "own" it. They can place the DVD in the shelf below their TV stand, and rest assured the DVD will not vanish into thin air with the passage of time. If they wish to view the movie 5 or 10 years later, they can plug the DVD into their DVD player, the Director's Cut of the movie will still play. The same cannot be said when one "buys" *Django Unchained* on APV. If Amazon loses the rights to the Director's Cut of the movie, Amazon might replace it with a different cut of the movie (such as the theatrical cut, which has 30 minutes of footage removed). And if Amazon loses the rights the movie altogether, it will *disappear* from the consumer's digital library.

---

[1] Steven Cohen and Sarah Saril, *Prime Video lets you stream popular movies and original shows – here's how to sign up*, https Business Insider, ://www.businessinsider.com/guides/streaming/what-is-prime-video

[2] Amazon, Amazon Prime Terms of Use – Global, https://www.primevideo.com/help?nodeId=202095490&view-type=content-only

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

3.    California law prohibits this kind of bait and switch. The California legislature recently enacted digital property rights transparency law that became effective on January 1, 2025. Cal. Bus. & Prof. Code § 17500.6. The law declares that "it shall be unlawful for a seller of a digital good to advertise or offer for sale a digital good to a purchaser with the terms 'buy,' 'purchase,' or any other term which a reasonable person would understand to *confer an unrestricted ownership interest in the digital good*… unless" one of two conditions is met. Cal. Bus. & Prof. Code § 17500.6(b)(1)(emphasis added). The seller needs to either (A) obtain "*an affirmative acknowledgment from the purchaser* indicating… [t]hat the purchaser is receiving a license to access the digital good [and that]... *access to the digital good may be unilaterally revoked by the seller*," or (B), give the consumers "a clear and conspicuous statement that … [s]tates in plain language that 'buying' or 'purchasing' the digital good is a license." Cal. Bus. & Prof. Code § 17500.6(b)(1)(A)-(B)(emphasis added). Defendant violated this law by advertising to consumers that they could "buy," "purchase," and "Add to Cart," audiovisual works on its website without satisfying either of these two conditions.

4.    Accordingly, Plaintiff brings claims against Defendant individually and on behalf of a class of all others similarly situated for a (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; and (3) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

**PARTIES**

5.    Plaintiff is a citizen of California, residing in Aliso Viejo, California. Plaintiff purchased a digital copy of *Bella and the Bulldogs – Volume 4* on Defendant's website on May 19 2025 for $17.79, after applying a $3.00 credit. Prior to making this purchase, she encountered a purchase flow substantially similar to the one depicted in this complaint.

6.    Amazon.com Services LLC is a limited liability company organized under the laws of the State of Delaware and has a principal place of business in Seattle, Washington. Defendant owns and operates the digital audiovisual catalog available nationwide and found at Amazon.com.

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims for all members of the proposed class are in excess of $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different from Defendant.

8.      This Court has personal jurisdiction over the parties because Plaintiff resides in California, is a citizen of California, and submits to the jurisdiction of the Court, and because Defendant has, at all times relevant hereto, systematically and continually conducted, and continues to conduct, business in Washington, including within this District. Defendant therefore has sufficient minimum contacts with this state, including within this District and/or intentionally availed itself of the benefits and privileges of the Washington consumer market through the promotion, marketing, and sale of its products and/or services to residents within this District and throughout Washington.

9.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Also, Plaintiff resides in this District and purchased Defendant's digital goods in this District. Moreover, Defendant systematically conducts business in this District and throughout the State of Washington, and it distributed, advertised, and sold its digital goods to Plaintiff and Class Members in this State and District.

## FACTUAL ALLEGATIONS
### California's Digital Property Rights Transparency Law

10.      In the old days, when consumers "bought" something, they could reasonably assume they would obtain the full 'bundle of sticks' we commonly know as property ownership.[3] In other words, if a consumer walked into a brick-and-mortar video store and "bought" a physical

---

[3] "The 'bundle of sticks' metaphor [is] often used to describe property, with each stick representing a right, privilege, power or immunity." *Pac. Gas & Elec. Co. v. Hart High-Voltage Apparatus Repair & Testing Co.*, 18 Cal. App. 5th 415, 427 (2017).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED - 3

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

VHS tape, they knew it was theirs to keep. Consumers could rest reasonably assured that they could place the VHS tape on their shelf and they could retrieve it whenever they wanted. If after a few years, they wanted to watch an old movie they purchased, they could place the tape in the VHS player, and it would play.

11.    However, nowadays, with digital goods, that is no longer a given. Many digital good providers that "sell" digital goods do not actually transfer full 'bundle of sticks.' Instead, they only grant **licenses** to access the digital content, which may or may not be revoked.

12.    This misunderstanding came to a fore in late 2023 and early 2024, when millions of gamers discovered that their game *The Crew* had been shut down.[4] Ubisoft, a French video game publisher, delisted (removed from digital storefronts) and subsequently shut down the servers (intentionally stopped the operation of the computer systems that host online services or applications, effectively making them unavailable) of *The Crew*.[5] Upset by the news of the video game's server being shut down, consumers and users of the game to start a movement named "Stop Killing Games," in an effort to "protect buyers against having products destroyed by the company that sold them."[6] This caught the attention of the California legislature, which was concerned about "consumers losing access to content."[7]

13.    The State of California addressed this exact concern by passing the Digital Property Rights Transparency Law, which ensures that "consumers clearly know and understand the nature

---

[4] Kotaku, *New Law Will Force Companies to Admit You Don't Actually Own Digital Games*, Zack Zwiezen (Sept. 27, 2024), https://kotaku.com/california-ab-2426-digital-games-the-crew-new-law-psn-1851659641.

[5] Ed Nightingale, *Ubisoft delists The Crew, with servers shutting next year*, EUROGAMER, December 15, 2023. https://www.eurogamer.net/ubisoft-delists-the-crew-with-servers-shutting-next-year

[6] Tom Phillips, *Stop Killing Games aims to mount political and legal challenges to games going offline*, EUROGAMER, April 4, 2024. https://www.eurogamer.net/stop-killing-games-aims-to-mount-political-and-legal-challenges-to-games-going-offline

[7] Stephen Totilo, *New Law Will Change How Digital Games Are Sold, At Least In California*, THE GAME FILE, Sept. 26, 2024.  https://www.gamefile.news/p/california-ab2426-crew-call-of-duty?utm_source=post-email-title&publication_id=66124&post_id=149460139&utm_campaign=email-post-title&isFreemail=true&r=1rwbaf&triedRedirect=true&utm_medium=email.

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

of their transactions…includ[ing] the reality that they may not have genuine ownership of their purchase." California Bill Comments, A.B. 2426 Assem., 8/23/2024.

14.    In an effort to protect consumers and require companies to inform consumers that they are purchasing a license, not the digital good itself on online storefronts, the California legislature recently passed a law "requiring sellers of digital goods to provide an explicit disclosure for each purchase of a digital good informing the consumer of the true nature of their purchase, ensuring that consumers have a full understanding of exactly what they have bought." California Bill Analysis, A.B. 2426 Assem., 8/23/2024.

15.    The California legislature recognized that "[a]s retailers continue to pivot away from selling physical media, the need for additional consumer protections on the purchase of digital goods becomes more important." *Id*. "When a consumer purchases an online digital good like a movie or TV show, they receive the ability to view the media at their leisure. *Id*. Often times, the consumer believes that their purchase has given them permanent ownership of that digital good, similar to how the purchase of movie on a DVD or a paperback book provides access in perpetuity. *Id*. In reality though, the consumer has only purchased a license, which, according to the seller's terms and conditions, the seller can revoke at any point." *Id*.

16.    The Law provides that:

(1) It shall be unlawful for a seller of a digital good to advertise or offer for sale a digital good to a purchaser with the terms "buy," "purchase," or any other term which a reasonable person would understand to confer an unrestricted ownership interest in the digital good, or alongside an option for a time-limited rental, unless either of the following occur:

(A) The seller receives at the time of each transaction an affirmative acknowledgment from the purchaser indicating all of the following:
(i) That the purchaser is receiving a license to access the digital good.
(ii) A complete list of restrictions and conditions of the license.
(iii) That access to the digital good may be unilaterally revoked by the seller if they no longer hold a right to the digital good, if applicable.
(B) The seller provides to the consumer before executing each transaction a clear and conspicuous statement that does both of the following:

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED - 5

(i) States in plain language that "buying" or "purchasing" the digital good is a license.
(ii) Includes a hyperlink, QR code, or similar method to access the terms and conditions that provide full details on the license.

Cal. Bus. & Prof. Code § 17500.6(b)(1).

17.     Under this law, "'digital good' means a digital audiovisual work, digital audio work, digital book, digital code, or digital application or game, whether electronically or digitally delivered or accessed." Cal. Bus. & Prof. Code § 17500.6 (a)(7).

18.     "These digital goods are often sold at almost the same price points to the physical copies of a digital good, like a DVD or a paperback book that has given them permanent ownership of that digital good." California Bill Comments, A.B. 2426 Assem., 8/23/2024. The reality is, "the consumer has only purchased a license, which, according to the seller's terms and conditions, the seller can revoke at any point." *Id.*

19.     Under this law, "'Clear and conspicuous' is defined as in a manner that clearly calls attention to the language, such as in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks." Cal. Bus. & Prof. Code § 17500.6 (a)(1).

20.     This law expands on the restrictions set forth in California's False Advertisement Laws that make it unlawful for any person doing business in California to make false or misleading advertising claims. It makes it unlawful to "to advertise or offer for sale a digital good that a reasonable person would understand to cover an unrestricted ownership in the digital good." *Id.*

**Amazon Misrepresents the Nature of the Consumer's Ownership Rights of Digital Goods During The Purchase Process**

**A.     The Purchase Process on Defendant's Smart Application on Televisions**

21.     Defendant's application, Amazon Prime Video, is a digital storefront that gives consumers the option to purchase audiovisual content like movies and television shows directly to their televisions. Amazon advertises a variety of movies and television shows on its website and

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

tells consumers they can "Buy" these works via its website. *See* Figure 1 on the following page. At no point on this screen does Amazon ever disclose to consumers they are receiving a license.



**Figure 1**

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

22.    If a consumer clicks "Buy" on a particular listing, and purchase restrictions are enabled, he or she is prompted to enter his or her Amazon Prime Video account pin for purchases.



**Figure 2**

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23.     After a consumer completes entering his or her account pin, they are taken to a confirmation page populates the screen asking the consumer to "Confirm purchase." *See* Figure 3 below. Prominently displayed below that text is the title of the movie, and representation about the price of the movie, and a big button that says "Buy movie" for "$14.99."



**Figure 3**

24.     Yet far below the "buy movie" button, buried at the very bottom confirm purchase screen is fine print that states: "BY BUYING OR RENTING, YOU RECEIVE A LICENSE TO THE VIDEO AND YOU AGREE TO OUR TERMS AT PRIMEVIDEO.COM/TERMS." (emphasis in the original).

25.     This does not meet the standards set by the statute for a clear and conspicuous notice that the thing they are purchasing is a revocable license to access the digital good. *See* Figure 3. The warning is buried at the very bottom of the screen, in font that is considerably smaller than the other text on the screen. Nor is anything on the screen that calls users' attention to this warning. Instead, the title of screen says "Confirm purchase" and lists the title of movie and along with the price, such that a reasonable consumer would only expect to be reviewing those prominently displayed terms, and not the small disclaimer buried far below.

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

26.     The visual aspects of the license disclaimer here do not satisfy California's "clear and conspicuous" notice standard. The notice is in the smallest size font on the entire screen, and uses neither in contrasting type nor font. The text is not in a different color from other surrounding text, there are no additional marks or symbols to put a consumer on notice. The notice is also placed at the very bottom of the confirm purchase screen. *Godun v. JustAnswer LLC*, 135 F.4th 699, 711 (9th Cir. 2025) (noting that terms are not conspicuous when "[t]he advisal text is printed in relatively small text and not located 'directly above or below' the action … button."),

27.     The context during which this disclaimer appears further undermines the conspicuousness of notice. It appears at the very last stage of the transaction, after the consumer has already clicked "Buy" on the first page in Figure 1, entered their account pin on the second page in Figure 2, and then reached the Confirm Purchase page on Figure 3. By the time they reach this page, they are not expecting to learn about any new material terms; they are expected to "confirm" the "purchase" of the digital good they already were repeatedly told they were buying outright. *See, e.g.*, *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) ("when a user simply purchases goods or avails herself of a one-time discount offer, … 'reasonably prudent users of defendants' sites are unlikely to be on the lookout for fine print.'").

28.     And by breaking up its purchase flow into multiple steps, Amazon further undermines the conspicuousness of this fine print disclaimer. By breaking up its purchase flow into three pages instead of one, Amazon is better able to conceal its inconspicuous terms. *See, e.g.*, *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (noting that the conspicuousness of terms is undermined when "the user is required to take multiple steps," just to find them).

**B.      The Purchase Process on Defendant's Website**

29.     The Purchase Process on Defendant's Website similarly fails to give clear and conspicuous notice of this disclaimer.

30.     Amazon's website, Amazon.com, is a digital storefront that gives consumers the option to purchase audiovisual content like movies and television shows. Amazon advertises a

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED - 10

variety of movies and television shows on its website and tells consumers they can "Buy" these works via its website. *See* Figure 4 below.



**Figure 4**

31.    If a consumer clicks "Buy" on a particular listing, such as Figure 4 below, and purchase restrictions are enabled, then a pop-up populates the screen asking the consumer to enter his or her account pin. *See* Figure 5 below.



**Figure 5**

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED - 11

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

32.      After a consumer enters their pin, then a second "Confirm purchase" screen appears which again contains a large button to click "Buy movie."



**Figure 6**

33.      The disclaimer is again located below the options to "Buy movie" or "cancel" and is again in font smaller than any other font on the screen.  Worse still, during this entire time, rolling clips of the movie selected play in the background, which further distract the user from the critical text disclosing the limited property interest being conveyed. *See, e.g.*, *Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 883 (N.D. Cal. 2025) (finding conspicuousness of notice was undermined where "notice is set against a dynamic background of rolling movie clips that change over time and distract the user's attention.")

34.      The digital product's ephemeral nature is confirmed by Amazon's Terms of Use agreement. The example in the Figures above included the purchase process for the movies *Materialists* and *Anora*. Amazon's Terms of Use confirms that Amazon grants the buyer a "non-

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

exclusive, non-transferable, non-sublicensable, limited license" to these audiovisual works. [8] And whereas if a consumer purchased a physical copy of the audiovisual work, the consumer could lend it to someone else to watch, with a digital copy of the audiovisual work, the consumer is not permitted to "transfer, copy or display the Digital Content."[9]

35.    In other words, at no point prior to the purchase is the consumer ever put on notice, in plain language, that the audiovisual work he or she is buying is just a license that can be revoked at any time. Nor is the consumer ever required to provide an affirmative acknowledgment that he or she knows the limited property rights he or she is receiving with the purchase of the digital video.

<u>**CLASS ALLEGATIONS**</u>

36.    **Class Definition**:  Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in California who have purchased a digital audiovisual work from Amazon.

37.    Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

38.    **Numerosity (Fed. R. Civ. P. 23(a)(1))**:  At this time, Plaintiff does not know the exact number of members of the aforementioned Class.  However, given the popularity of Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

39.    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3))**:  There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

> (a)  Whether Defendant used terms such as "buy" or "purchase" in connection with the sale of its digital audiovisual works;

---

[8] Amazon, Amazon Prime Terms of Use – Global, https://www.primevideo.com/help?nodeId=202095490&view-type=content-only

[9] *Id.*

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

(b) Whether Defendant received an affirmative acknowledgment from class members compliant with  Cal. Bus. & Prof. Code § 17500.6(b)(1)(A); and

(c) Whether Defendant provided clear and conspicuous notice to class members  as required by  Cal. Bus. & Prof. Code § 17500.6(b)(1)(B).

40.    **Typicality (Fed. R. Civ. P. 23(a)(3)):**  Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased digital audiovisual works from Amazon without an express warning that they were receiving a license and without any acknowledgement regarding the limits of the purchase.

41.    **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiff and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff has raised viable claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

42.    **Superiority (Fed. R. Civ. P. 23(b)(3)):**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties,

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

conserves the resources of the parties and of the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.

### COUNT I
**Violations of the California Unfair Competition Law**
**Bus. & Prof. Code §§ 17200 et seq.**

43.     Plaintiff incorporates by reference all of the foregoing paragraphs.

44.     Plaintiff brings this claim individually and on behalf of the Class.

45.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210prohibits "any unlawful, unfair, or fraudulent business act or practice."   The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring an action on behalf of herself or himself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

46.     By committing the acts and practices alleged herein, Defendant has violated the UCL by engaging in unlawful, unfair, and fraudulent conduct. Specifically, Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** by violating California Bus. & Prof. Code §§ 17500.6(b)(1).

47.     California Business & Professional Code § 17500.6(b)(1) prohibits "a seller of a digital good to advertise or offer for sale a digital good to a purchaser with the terms "buy," "purchase," or any other term which a reasonable person would understand to confer an unrestricted ownership interest in the digital good."

48.     Defendant is a seller of digital goods because it sells digital audiovisual works on its website.

49.     Defendant's digital audiovisual works are digital goods under the statute. A "digital good" is defined as including a "is a digital audiovisual work, digital audio work, digital book, digital code, or digital application or game, whether electronically or digitally delivered or

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

1    accessed." Cal. Bus. & Prof. Code § 17500.6(a)(7). Defendant's digital audiovisual works are a

2    digital audio work that can be downloaded after purchase.

3        50.    Defendant advertises and offers for sale its digital audiovisual works in a manner

4    that conveys an unrestricted ownership interest in the digital good. Defendant offers its digital

5    audiovisual works for sale using the terms "Buy," and "Add to Cart," as depicted in Figures 1

6    through 4 of this Complaint. Plaintiff, and members of the Class, as a reasonable person viewing

7    the website in order to make a purchase, would understand that the digital good offered and

8    advertised by Defendant was being offered to consumers with an unrestricted ownership interest.

9        51.    California Business & Professional Code § 17500.6(b)(1) has two exceptions to this

10    general prohibition of offering digital goods for sale using the terms like "buy" or "purchase."

11    However, Defendant cannot fall into either of these exceptions. Defendant never received "an

12    affirmative acknowledgment from the purchaser indicating: (i) that the purchaser is receiving a

13    license to access the digital good; (ii) a complete list of restrictions and conditions of the license;

14    (iii) that access to the digital good may be unilaterally revoked by the seller if they no longer hold a

15    right to the digital good, if applicable." Cal. Bus. & Prof. Code § 17500.6(b)(1)(A). Furthermore,

16    Defendant never provided "a clear and conspicuous statement that does both of the following: (i)

17    States in plain language that "buying" or "purchasing" the digital good is a license; (ii) includes a

18    hyperlink, QR code, or similar method to access the terms and conditions that provide full details

19    on the license." Cal. Bus. & Prof. Code § 17500.6(b)(1)(B).

20        52.    Defendant's acts and omissions as alleged herein violate obligations imposed by

21    statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical,

22    oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

23    attributable to such conduct.

24        53.    There were reasonably available alternatives to further Defendant's legitimate

25    business interests, other than the conduct described herein.

26        54.    Defendant's acts, omissions, nondisclosures, and misleading statements as alleged

27    herein were and are false, misleading, and/or likely to deceive the consuming public.

28

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

55.     Plaintiff and the members of the Class have suffered an economic injury that flowed from Defendant's violation of the law. Defendant's acts caused Plaintiff and Class members to overpay for audiovisual works under the belief that they owned them outright.  Had Defendant properly disclosed the true nature of the limited property rights it was conveying, it could not charge as much as it did for them, and it would need to reduce its prices to compete with other competitors. Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

56.     Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue of Defendant's acts of unfair competition, which caused them to overpay for videos under the belief that they owned them outright.   Had Plaintiff and class members known they were only obtaining revocable licenses to videos, they would have paid substantially less for those licenses.  Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

57.     Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices.

58.     Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's accounts in connection with the videos purchased, or at a minimum, the price premium they paid. Defendant should be required to disgorge all the profits and gains they have reaped and restore such profits and gains to Plaintiff and the Class, from whom they were unlawfully taken.

59.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

60.     Plaintiff brings this action as private attorneys general and to vindicate and enforce an important right affecting the public interest.  Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

61.     Plaintiff has no adequate remedy at law for this claim.  There is no commensurate legal remedy for Plaintiff's requested relief under this count.  Alternatively, legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief.  *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future"). Furthermore:

a) To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

b) Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks such relief here.

c) Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

62.     Plaintiff also lacks an adequate remedy at law to prevent future harm.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED - 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT II
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

63.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

64.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

65.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

66.     Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's digital audiovisual works, as well as circumstances and facts connected to such products, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those digital goods as advertised.

67.     Defendant's statements include but are not limited to representations and omissions that made consumers reasonably believe the digital audiovisual works Defendant's offered on sale carried with them an unrestricted property interest. In particular, Defendant offers its digital audiovisual works for sale using the terms "Buy" and "Add to Cart," as depicted in Figures 1 through 4 of this Complaint.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED - 19

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

68.    Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

69.    Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they paid for their digital goods, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well.  Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions.  Plaintiff and other members of the Class did not learn about the true limited nature of the property interests they received until after they had already paid for Defendant's digital goods.  They relied on Defendant's statements and omissions to their detriment.

70.    Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the digital goods on the same terms if the true facts were known about the product and the digital goods do not have the characteristics as promised by Defendant.

71.    Plaintiff, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

72.    Plaintiff also seeks equitable relief, including restitution, with respect to their FAL claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed.  Plaintiff and the California Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

under the FAL, because Plaintiff may not be able to establish each California Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualized proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'").  In addition, Plaintiff and the California Subclass may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.  Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.   The return of the full premium price, and an injunction requiring the return of the full premium price, and an injunction requiring adequate disclosure ownership rights conveyed to consumers prior to the execution of purchase will ensure that Plaintiff and the California Subclass Members are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, the position to make an informed decision about the purchase of the digital goods absent omissions and misrepresentations with the full purchase price at their disposal.

73.    Plaintiff seeks, on behalf of themselves and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading, and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to seek legal redress repeatedly and continuously in order to recover monies paid to Defendant to which they are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

1  to ensure future compliance with the California Business and Professions Code alleged to have

2  been violated herein.

**COUNT III**
**Violation of California Consumer Legal Remedies Act**
**Cal. Civil Code § 1750 *et seq*.**

5      74.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the

6  preceding paragraphs as though alleged in this Count.

7      75.     Plaintiff brings this claim individually and on behalf of the members of the

8  proposed Class and Subclass against Defendant.

9      76.     At the time Plaintiff and members of the Class and Subclasses purchased their

10  videos from APV, Defendant did not fully disclose the limited property interest it was conveying in

11  the videos.

12     77.     This cause of action is brought pursuant to California's Consumers Legal Remedies

13  Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

14     78.     Plaintiff and members of the Class are consumers who purchased Defendant's

15  digital audiovisual works.  Accordingly, Plaintiff and members of the Class are "consumers," as

16  the term is defined by Cal. Civ. Code § 1761(d).

17     79.     At all relevant times, Defendant's digital audiovisual works constituted "goods," as

18  that term is defined in Cal. Civ. Code § 1761(a).

19     80.     At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ.

20  Code § 1761(e).

21     81.     At all relevant times, Plaintiff's purchases of Defendant's digital audiovisual works,

22  and the purchases of other Class members, constituted "transactions," as that term is defined in Cal.

23  Civ. Code § 1761(e).

24     82.     The conduct alleged in this Complaint constitutes unfair methods of competition

25  and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was

26  undertaken by Defendant in transactions intended to result in, and which did result in, the sale of

27  goods to consumers.

28

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED - 22

83.    The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Products to Plaintiff and the Class. Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

84.    Defendant advertised goods with intent not to sell them as advertised in violation of California Civil Code § 1770(a)(9).

85.    Defendant also represented that a transaction conferred legal rights, remedies, or obligations that it does not have in violation of California Civil Code § 1770(a)(14).

86.    Plaintiff and members of the Class suffered injuries caused by Defendant's misrepresentations because (a) Plaintiff and members of the Class would not have purchased the digital audiovisual works on the same terms if they had known the true facts; (b) Plaintiff and members of the Class paid a price premium for the videos believing they owned them outright.

87.    Wherefore, Plaintiff seeks injunctive relief for this violation of the CLRA.

88.    On August 21, 2025, a CLRA demand letter was sent to Defendant's address via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, on behalf of herself and all others similarly situated, as follows:

(a)    For an order certifying the Classes pursuant Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For an award of damages to the extent available;

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED - 23

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel. (425) 395-7787 Fax (425) 837-5396

1

2

        (e)     For an award of restitution and disgorgement of profits in an amount to be determined at trial;

3

4

        (f)     For punitive damages, as warranted, in an amount to be determined at trial;

5

        (g)    For prejudgment interest on all amounts awarded; and

6

        (h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

7

8

## **JURY TRIAL DEMANDED**

9

Plaintiff demands a trial by jury on all claims so triable.

10

11

Dated:  August 21, 2025

12

By: ___/s/ *Wright A. Noel*_____
            Wright A. Noel

13

14

Wright A. Noel
wright@carsonnoel.com

15

CARSON NOEL PLLC
20 Sixth Avenue NE

16

Issaquah, WA 98027
Tel:  425.837.4717

17

Fax: 425.837.5396

18

19

Philip L. Fraietta*
1330 Avenue of the Americas, 32nd Floor

20

New York, NY 10019
Telephone: (646) 837-7150

21

Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

22

23

Stafan Bogdanovich*
1990 North California Blvd., 9th Floor

24

Walnut Creek, CA 94596
Telephone: (925) 300-4455

25

Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

26

27

**Pro hac vice* admission to be sought.

28

*Attorneys for Plaintiff and the Putative Class*