THE HONORABLE RICARDO S. MARTINEZ

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

LISA REINGOLD, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

AMAZON.COM SERVICES LLC, a Delaware corporation,

        Defendant.

Case No. 2:25-cv-01601-RSM

**OPPOSITION TO MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    THE TEXT AND LEGISLATIVE HISTORY OF CALIFORNIA'S
       DIGITAL PROPERTY RIGHTS TRANSPARENCY LAW ...............................3

III.   ARGUMENT .......................................................................................................4

       A.     Reingold Has Standing Because She Overpaid For Her Videos ................4

       B.     Applying Amazon's Choice of Law Would Violate Washington's
              Fundamental Policy Exception .................................................................6

              1.     California's Digital Property Rights Transparency Law
                     Reflects A Fundamental Policy Of The State.................................6

              2.     California Has A Materially Greater Interest In Protecting *Its*
                     Consumers From Misleading Sales Practices...............................10

              3.     California Has The Most Significant Relationship To The
                     Transaction ...............................................................................10

       C.     Reingold States A Claim Under California Law ......................................11

              1.     Amazon Did Not Comply With
                     The Digital Property Rights Transparency Law...........................11

                     Amazon's Statement Was Not Distinct And Separate .................12

                     The Bundled Statement Is Also Not Clear And Conspicuous......13

              2.     Because Amazon violated the Digital
                     Rights Transparency Law, Plaintiff states a UCL Claim ............19

              3.     Amazon's "Buy movie" Button Is A
                     Misrepresentation, And Plaintiff Reasonably Relied On It..........19

              4.     Amazon's Digital Videos Qualify As "Goods" or "Services" ....22

                     Videos That Manifest On Physical Screens Constitute Goods. ...22

IV.    CONCLUSION ..................................................................................................24

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Andino v. Apple, Inc.*,
   2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ............................................................. 21

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ...................................................................................... 19

*Brack v. Omni Loan Co.*,
   164 Cal. App. 4th 1312 (2008) ..................................................................................... 7

*Cappello v. Walmart Inc.*,
   2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ............................................................ 13

*Chabolla v. ClassPass, Inc.*,
   129 F.4th 1147 (9th Cir. 2025) .................................................................................... 19

*Chong v. Friedman*,
   No. A107716, 2005 WL 2083049 (Cal. Ct. App. Aug. 30, 2005) ................................ 8

*Cottman Transmission Sys., LLC v. Kershner*,
   492 F. Supp. 2d 461 (E.D. Pa. 2007) ........................................................................... 8

*Crowell v. Audible Inc.*,
   2025 WL 2939260 (W.D. Wash. October 16, 2025) ...................................................... 8

*Delman v. J. Crew Grp., Inc.*,
   2017 WL 3048657 (C.D. Cal. May 15, 2017) ............................................................. 11

*Doe v. Roblox Corp.*,
   602 F. Supp. 3d 1243 (N.D. Cal. 2022) ........................................................................ 2

*Douglas v. United States Dist. Court Cent. Dist. Cal.*,
   495 F.3d 1062 (9th Cir. 2007) .................................................................................... 10

*Edwards v. MUBI, Inc.*,
   773 F. Supp. 3d 868 (N.D. Cal. 2025) ........................................................................ 18

*Farmer v. BarkBox, Inc.*,
   2023 WL 8522984 (C.D. Cal. Oct. 6, 2023) .......................................................... 17, 18

*Ferrington v. McAfee, Inc.*,
   2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ............................................................... 23

*Garner v. Amazon.com, Inc.*,
   603 F.Supp.3d 985 (W.D. Wash. May 6, 2022) ............................................................ 8

*Haskins v. Symantec Corp.*,
  2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ............................................................ 23

*Heinz v. Amazon, Inc.*,
  2024 WL 2091108 (W.D. Wash. May 8, 2024) ........................................................... 8

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ............................................................................. 2, 21

*Hogan v. Amazon.com, Inc.*,
  2022 WL 952763 (N.D. Ill. Mar. 30, 2022) ............................................................... 9

*In re Amazon Prime Video Litig.*,
  No. 2:22-CV-00401-RSM, 2024 WL 1138906 (W.D. Wash. Mar. 15, 2024) .............. 1, 5, 20

*In re Amazon Serv. Fee Litig.*,
  705 F. Supp. 3d 1255 (W.D. Wash. 2023) ................................................................ 9

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................................ 21

*Ladore v. Sony Computer Entm't Am., LLC*,
  75 F.Supp.3d 1065 (N.D. Cal. 2014) ..................................................................... 23

*Lozano v. AT & T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) ............................................................................... 20

*Mansfield v. StockX LLC*,
  --- F. Supp.3d ----, 2025 WL 2811791 (N.D. Cal. Oct. 3, 2025) ......................... 5, 21, 22

*Mayhall v. Amazon Web Servs. Inc.*,
  2024 WL 3842563 (W.D. Wash. May 29, 2024) ........................................................ 9

*McTyere v. Apple, Inc.*,
  663 F. Supp. 3d 247 (W.D.N.Y. 2023) ................................................................... 20

*O'Brien v. Shearson Hayden Stone, Inc.*,
  90 Wash. 2d 680 (1978) ........................................................................... 6, 7, 10, 11

*Ochoa v. Zeroo Gravity Games LLC*,
  2023 WL 4291650 (C.D. Cal. May 24, 2023) ............................................................. 2

*Oestreicher v. Alienware Corp.*,
  502 F. Supp. 2d 1061 (N.D. Cal. 2007) .................................................................. 10

*Penermon v. Wells Fargo Bank, N.A.*,
  47 F. Supp. 3d 982 (N.D. Cal. 2014) ..................................................................... 20

*Perea v. Walgreen Co.*,
  939 F.Supp.2d 1026 (C.D. Cal. 2013) .................................................................... 20

*Perrine v. Sega of Am., Inc.*,
  2013 WL 6328489 (N.D. Cal. Oct. 3, 2013) ........................................................ 23

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ............................................................................... 5

*Rivera v. Amazon Web Servs., Inc.*,
  2023 WL 4761481 (W.D. Wash. July 26, 2023) ................................................... 9

*Sellers v. JustAnswer LLC*,
  73 Cal. App. 5th 444 (2021) ........................................................................ passim

*Thomas v. Costco Wholesale Corp.*,
  2014 WL 1323192 (N.D. Cal. Mar. 31, 2014) .................................................... 22

*Van Slyke v. Capital One Bank*,
  503 F. Supp. 2d 1353 (N.D. Cal. 2007) .............................................................. 10

*Vance v. Amazon.com Inc.*,
  534 F. Supp. 3d 1314 (W.D. Wash. 2021) ............................................... 9, 10, 11

*Wilson v. Huuuge, Inc.*,
  944 F.3d 1212 (9th Cir. 2019) ............................................................................ 19

*Wissot v. Great-W. Life & Annuity Ins. Co.*,
  619 F. App'x 603 (9th Cir. 2015) (applying identical approach under California law) ............ 6, 7

*Woulfe v. Universal City Studios LLC*,
  2022 WL 18216089 (C.D. Cal. Dec. 20, 2022) .................................................... 2

**STATUTES**

Cal. Bus. & Prof.Code § 17200 ................................................................................ 20

Cal. Bus. & Prof. Code § 17500.6 ................................................................... 1, 3, 20

Cal. Bus. & Prof. Code § 17500.6(a)(1) ..................................................... 2, 3, 13, 14

Cal. Bus. & Prof. Code § 17500.6(b)(1) ...................................................... 2, 3, 6, 21

Cal. Bus. & Prof. Code § 17500.6 (b)(1)(A) ............................................................. 3

Cal. Bus. & Prof. Code § 17500.6 (b)(1)(B) .................................................... 3, 4, 14

Cal. Bus. & Prof. Code § 17500.6(b)(2) ........................................................... 1, 4

Cal. Civ. Code § 1761(a) ........................................................................................ 23

**OTHER AUTHORITIES**

A.B. 2426................................................................................................................... passim

Restatement (Second) Conflict of Laws § 187 ............................................................... 6

Restatement (Second) of Conflict of Laws § 188(2) (1971) ......................................... 11

I.     **INTRODUCTION**

In the summer of 2024, California lawmakers asked themselves, "when you buy a movie from a digital service like Amazon Prime Video … does it really belong to you?" California Bill Analysis, A.B. 2426 Assem., 6/25/2024. This was not a merely rhetorical question. The California Department of Commerce Internet Policy Task Force investigated the issue and found that consumers often lack "a clear understanding whether they own or license the products and services they purchase online due in part to the length and opacity of most EULAs, the labelling of the 'buy' button, and the lack of clear and conspicuous information regarding ownership status on websites." *Id*. "This lack of understanding has frequently led to consumer confusion and frustration when their purchased digital good disappears from their online library, sometimes with little to no warning." *Id*. So two months later, the California legislature enacted the Digital Rights Transparency Law, Cal. Bus. & Prof. Code § 17500.6, which Plaintiff is now seeking to enforce.

Amazon argues this Court should not hear the merits of the case because Plaintiff lacks standing and its Washington choice of law clause. Neither works. This Court already held that the exact injury Plaintiff alleges here—overpaying for videos she thought she owned—is a concrete injury-in-fact sufficient for standing. *In re Amazon Prime Video Litig*., No. 2:22-CV-00401-RSM, 2024 WL 1138906, at *3 (W.D. Wash. Mar. 15, 2024). And nullifying the California legislature's decision to prohibit Amazon from using the word "buy" unless it obtained an affirmative acknowledgment from consumers or otherwise gave statutorily prescribed notice would violate Washington's choice of law rules. The fundamental policy exception exists precisely for situations like this, where a state like California has enacted a comprehensive regulatory scheme that would be entirely vitiated by contractual choice of law.

Amazon did not comply with the California Digital Property Rights Transparency Law. The statute requires that any license disclaimer "shall be distinct and separate from any other terms and conditions of the transaction." Cal. Bus. & Prof. Code § 17500.6(b)(2). But here, Amazon's license disclaimer appears in fine print text block that discuss *other refund terms*. Its Motion to Dismiss ("MTD") entirely ignores this provision. The statute also requires that the disclaimer "clearly calls

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-cv-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

1

attention to the language." CBPC § 17500.6(a)(1). Amazon's disclaimer is the opposite: it is the smallest, least conspicuous text on the entire screen, buried at the bottom and far from the user's primary area of focus. The statute provides examples of what "clear and conspicuous" means: "larger type than the surrounding text," "contrasting type, font, or color," or text "set off … by symbols or other marks." CBPC § 17500.6(a)(1). Amazon's disclaimer is none of these. It is smaller than the surrounding text and uses no contrasting design elements or symbols.

Amazon's remaining arguments—that no reasonable consumer could be misled or reasonably rely on its "Buy movie" button—ignores the California legislature's judgment. Here, the legislature made it "unlawful … to advertise or offer for sale a digital good to a purchaser with the term[] 'buy,'… alongside an option for a time-limited rental" without appropriate disclosures or acknowledgments because it found Amazon's practices *do mislead* consumers into thinking they are getting a "unrestricted ownership interest." Cal. Bus. & Prof. Code § 17500.6 (b)(1). The Ninth Circuit put this in no uncertain terms: "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts *must* defer to that determination." *Hinojos v. Kohl's Corp.* 718 F.3d 1098, 1107 (9th Cir. 2013) (emphasis added). This forecloses Amazon's arguments.

And Amazon's argument that its videos are not "goods" or "services" under the CLRA is contrary to both its own cited authorities and its terms of use. While courts are divided on whether digital videos constitute tangible "goods" under the CLRA, they consistently hold that streaming videos or video games are "services" under the CLRA. *See, e.g.*, *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1263 (N.D. Cal. 2022); *Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650, at *13 (C.D. Cal. May 24, 2023). None of the cases Amazon cites hold otherwise. In fact, the court in *Woulfe v. Universal City Studios LLC*, 2022 WL 18216089, at *15 (C.D. Cal. Dec. 20, 2022) expressly said "the video streaming services provided by Amazon" "could be interpreted as a provision of video streaming services" under the CLRA. Indeed, Amazon Prime Video's own terms refers to the streaming of movies as a "service." ECF No. 14-2.

For these reasons, Amazon's motion to dismiss should be denied.

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

2

1
2

## II.    THE TEXT AND LEGISLATIVE HISTORY OF CALIFORNIA'S DIGITAL PROPERTY RIGHTS TRANSPARENCY LAW

3

California's Digital Property Rights Transparency Law took effect on January 1, 2025. Cal.

4

Bus. & Prof. Code § 17500.6. The legislature enacted the law after the "Department of Commerce

5

Internet Policy Task Force" found that consumers lack "a clear understanding whether they own or

6

license the products and services they purchase online due in part to the length and opacity of most

7

EULAs, the labelling of the 'buy' button, and the lack of clear and conspicuous information

8

regarding ownership status on websites." California Bill Analysis, A.B. 2426 Assem., 6/25/2024.

9

The legislature responded by making it "unlawful for a seller of a digital good to advertise

10

or offer for sale a digital good to a purchaser with the terms 'buy,' 'purchase,' or any other term

11

which a reasonable person would understand to confer an unrestricted ownership interest in the

12

digital good, or alongside an option for a time-limited rental." Cal. Bus. & Prof. Code § 17500.6

13

(b)(1). They carved out only two exceptions to this general rule.

14

The first exception—which Amazon appears to concede is inapplicable—requires that the

15

seller "receive[] at the time of each transaction an affirmative acknowledgment from the purchaser

16

indicating," among other things, that they are *knowingly* "receiving a license to access the digital

17

good," and "[t]hat access to the digital good may be unilaterally revoked by the seller if they no

18

longer hold a right to the digital good." CPBC § 17500.6 (b)(1)(A). The second exception is if:

19

"[t]he seller provides to the consumer before executing each transaction a *clear and conspicuous*

20

statement that … both … (i) States in plain language that 'buying' or 'purchasing' the digital good

21

is a license [and] (ii) Includes a hyperlink, QR code, or similar method to access the terms and

22

conditions that provide full details on the license." CPBC § 17500.6 (b)(1)(B) (emphasis added).

23

To be "clear and conspicuous" a statement must be displayed "in a manner that clearly calls

24

attention to the language, such as in larger type than the surrounding text, or in contrasting type,

25

font, or color to the surrounding text of the same size, or set off from the surrounding text of the

26

same size by symbols or other marks." Cal. Bus. & Prof. Code § 17500.6(a)(1). What is more ,

27

"[i]n order to ensure consumers are adequately put on notice in these transactions, the

28

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

acknowledgment or statement above must be separate and distinct from any other terms and conditions of the transaction." California Bill Analysis, A.B. 2426 Assem., 6/25/2024. To that end, the law further provided that "[a]ny … clear and conspicuous statement pursuant to paragraph (1) shall be distinct and separate from any other terms and conditions of the transaction that the purchaser acknowledges or agrees to." CBPC § 17500.6 (b)(2).

In passing the law, lawmakers declared: "[a]s we move toward an increasingly digital-only marketplace, *it is crucial* that consumers clearly know and understand the nature of their transactions." California Bill Analysis, A.B. 2426 Assem., 8/23/2024 (emphasis added). It also stressed that in light of these developments, "the need for additional consumer protections on the purchase of digital goods *becomes more important*." *Id*. (emphasis added). As such, the statute was intended to "requir[e] sellers of digital goods to provide an explicit disclosure for each purchase of a digital good informing the consumer of the true nature of their purchase, ensuring that consumers have a full understanding of exactly what they have bought." *Id*.

## III.    ARGUMENT

### A.    Reingold Has Standing Because She Overpaid For Her Videos

Amazon argues Reingold lacks Article III or California statutory standing because she has not alleged a concrete injury. MTD at 10 and 18. This is untrue. Plaintiff alleges:

> Plaintiff and the members of the Class have suffered an economic injury that flowed from Defendant's violation of the law. Defendant's acts caused Plaintiff and Class members to *overpay for audiovisual works under the belief that they owned them outright.* Had Defendant properly disclosed the true nature of the limited property rights it was conveying, it could not charge as much as it did for them, and it would need to reduce its prices to compete with other competitors. Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

Complaint ("Compl.") ¶ 55 (emphasis added).

> Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue of Defendant's acts of unfair competition, which caused them to overpay for videos under the belief that they owned them outright. Had Plaintiff and class members known they were only obtaining revocable licenses to videos, they would have paid substantially less for those licenses.

*Id.* ¶ 56.

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

4

This Court already held identical allegations in *In re Amazon Prime Video Litigation* "establish[] standing":

> Plaintiffs have alleged an injury in fact, *i.e.*, they overpaid for a purchase they otherwise would not have paid for because they did not get the full value of their purchase, owning outright vs purchasing a limited license.

2024 WL 1138906, at *3 (W.D. Wash. Mar. 15, 2024). That holding controls here.

Also, an allegation of "overpayment" is sufficient to plead "statutory standing" under California law because "economic injury under the CLRA 'demands no more than the corresponding requirement under Article III.'" *Mansfield v. StockX LLC*, --- F. Supp.3d ----, 2025 WL 2811791, at *7 (N.D. Cal. Oct. 3, 2025) (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)). Amazon concedes that under this Court's precedent, a plaintiff would have standing if her overpayment "injury was caused by Amazon's misrepresenting how consumers can 'buy' Digital Content from Amazon." MTD at 13 (quoting *In re Amazon Prime Video Litigation*, 2024 WL 1138906, at *5).

Amazon attempts to distinguish *In re Amazon Prime Video Litigation* on the ground that the prior case involved general "misrepresentation" while this case involves a violation of California's Digital Property Rights Transparency Law. MTD at 13-14. Amazon has it backwards. The misrepresentation (the "Buy movie" button) and the injury (overpayment) are the same. That lawmakers responded to Amazon's practices "by prohibiting sellers from advertising or offering for sale digital goods using the terms 'buy,' 'purchase,'" California Bill Analysis, A.B. 2426 Assem., 6/25/2024, does not make its case better, but worse.

And Amazon's argument that Plaintiff's injury is "speculative" because Amazon may or may not yet have lost "the rights [to] the movie altogether," *see* MTD at 12-13, attacks a strawman theory of injury Plaintiff never alleges. Plaintiff does not allege she might one day be harmed because Amazon might lose the rights to its movies sometime in the future. Plaintiff alleges she was harmed *at the point of purchase* when she overpaid for a product by receiving less property

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

5

rights than she bargained for. Compl. ¶¶ 2, 55-56. The future loss of movie rights is an altogether separate injury Plaintiff does not allege here.[1]

### B. Applying Amazon's Choice of Law Would Violate Washington's Fundamental Policy Exception

Amazon's Washington choice of law clause does not bar Plaintiff's California claims. Under Washington's choice of law rules, courts decline to enforce contractual choice of law clauses where, as here, its application "would be contrary to a fundamental policy" of a state with a "materially greater interest" in the dispute. Restatement (Second) Conflict of Laws § 187; *O'Brien v. Shearson Hayden Stone, Inc.*, 90 Wash. 2d 680, 685 (1978).

### 1. California's Digital Property Rights Transparency Law Reflects A Fundamental Policy Of The State.

In determining whether a policy is fundamental, Washington follows Section 187 of the Restatement. *O'Brien*, 90 Wash. 2d at 686. Under Section 187, California's Digital Property Rights Transparency Law bears all the hallmarks of a fundamental policy.

**First**, the Digital Property Rights Transparency Law makes it presumptively "unlawful for a seller of a digital good to … offer for sale a digital good to a purchaser with the terms 'buy,' 'purchase.'" CBPC § 17500.6(b)(1). The Restatement identifies fundamental policies are those "embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." Restatement (Second) Conflict of Laws § 187, cmt. g, at 567-69 (1971); *accord Wissot v. Great-W. Life & Annuity Ins. Co.*, 619 F. App'x 603, 604 (9th Cir. 2015) (applying identical approach under California law). This is such a law.

**Second**, the CBPC § 17500.6(b)(1) prohibition, the (b)(1)(A) "affirmative acknowledgment" exception, the (b)(1)(B) "clear and conspicuous statement" exception, and (b)(2) "distinct and separate" requirements are all "designed to protect a person against the oppressive use of superior bargaining power." Restatement (Second) Conflict of Laws § 187, cmt. g, at 567-69

---

[1] None of the other standing cases Amazon relies on are helpful because they do not concern allegations that a plaintiff overpaid for videos under the mistaken belief she was owning them.

(1971). By their very nature, sales of digital goods are contracts of adhesion because Amazon offers its videos for sale on a take-it-or-leave it basis. And to that end, these provisions all work in tandem to help "ensur[e] that consumers have a full understanding of exactly what they have bought." California Bill Analysis, A.B. 2426 Assem., 8/23/2024. As a California appeals court noted, a policy is fundamental if it is reflected in "the law as an integral whole, the particular parts of which reinforce each other." *Brack v. Omni Loan Co*., 164 Cal. App. 4th 1312, 1325 (2008). Here, the law does precisely that: reflect a comprehensive scheme that regulates how digital goods are advertised and sold to California consumers to avoid confusion.

**Third**, the Digital Property Rights Transparency Law history confirms lawmakers viewed these protections as essential. In determining whether a given policy is fundamental, courts are also to look for "a clear and unequivocal statement by the people … through their elected representatives." *O'Brien*, 90 Wash. 2d 680, 686 (finding usury law to reflect a fundamental policy of the state because the statute said it was intended "to protect the residents of this state from debts bearing burdensome interest rates"); *accord Wissot*, 619 F. App'x at 604 (9th Cir. 2015) (In determining whether a policy is fundamental, "California courts have, on many occasions, looked to legislative enactments for expressions of 'strong public policy.'") (collecting cases). In passing the California Digital Property Rights Transparency Law, lawmakers said that "*it is crucial* that consumers clearly know and understand the nature of their transactions." California Bill Analysis, A.B. 2426 Assem., 8/23/2024 (emphasis added). The legislature also stressed that because of recent developments, "the need for additional consumer protections on the purchase of digital goods *becomes more important*." *Id*. (emphasis added). As in *Brack*, here, the "Legislature's statement of purposes, the remedies the Legislature has provided and the enforcement mechanism it has created make it clear not only that the requirements of the [Digital Property Rights Transparency] Law are matters of fundamental public policy which cannot be waived by way of agreement between the parties, but that the provisions of the law must be viewed together." 164 Cal. App. 4th at 1326.

*Chong v. Friedman*, No. A107716, 2005 WL 2083049, at *4 (Cal. Ct. App. Aug. 30, 2005) is instructive. There, the California Court of Appeals refused to enforce a Nevada choice of law

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

7

clause where it would have invalidated a similar California law requiring "presale disclosures to potential purchasers." *Id*. The Court held that this law, "[t]he CFIL[,] was enacted to effectuate California's policy of protecting franchisees from fraud and deception in franchise sales. California has a significant interest in this dispute given Chong's allegations that defendants violated the CFIL's disclosure requirements. There is no franchise disclosure law in Nevada and, thus, to enforce the choice of law provision in this case would defeat the strong fundamental policy of California's law." *Id*. In reaching this conclusion the Court said: "It is of note that only 14 states besides California have franchise disclosure laws." *Id*.; *accord Cottman Transmission Sys., LLC v. Kershner*, 492 F. Supp. 2d 461, 469 (E.D. Pa. 2007) (similarly refusing to enforce a Pennsylvania choice of law clause where it would override California's "franchise disclosure statute"). The same concerns ring true here. California's Digital Property Rights Transparency law likewise mandates certain "presale disclosures" which are not present in Washington law. And significantly, Plaintiffs' counsel is not aware of other state that has passed any similar piece of legislation on this novel issue, nor does Amazon identify any in its papers. So if Washington law governed this dispute, it would thwart California's fundamental interest in ensuring their state citizens "clearly know and understand the nature of their transactions." California Bill Analysis, A.B. 2426 Assem., 8/23/2024. As the legislature expressly said, this "is crucial." *Id*.

Amazon's cases are all distinguishable. *Crowell v. Audible Inc*., 2025 WL 2939260 (W.D. Wash. October 16, 2025), *Heinz v. Amazon, Inc.*, 2024 WL 2091108 (W.D. Wash. May 8, 2024) and *Garner v. Amazon.com, Inc*., 603 F.Supp.3d 985 (W.D. Wash. May 6, 2022) all involved anti-wiretapping laws under statutes that exist in both California *and* Washington. The courts in those cases expressly noted that Washington's law "'is considered one of the most restrictive [anti-wiretapping statutes] in the nation.'" *Crowell*, 2025 WL 2939260, at *8 (quoting *Garner*, 603 F.Supp.3d at 996). Applying Washington law thus did not undermine California's policy. *See id*. Here, in contrast, there is no Washington statute comparable to California's Digital Property Rights Transparency Law. Whereas California law requires sellers to receive an affirmative acknowledgment from consumers and/or provide a separate and distinct disclosure in a clear and

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

8

1   conspicuous fashion, Washington law has no similar bright-line rules. Amazon's reliance on *In re*

2   *Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1265 (W.D. Wash. 2023), *aff'd*, No. 24-5176, 2025

3   WL 2268252 (9th Cir. Aug. 8, 2025) is even more strained. In that case, "[p]laintiff has not even

4   attempted to show that there is an actual conflict[.]" *Id*. Here, in contrast, a conflict plainly exists.

5          What is more, Courts have repeatedly refused to defer Amazon's Washington choice of law

6   when doing so would nullify another state's consumer protection statute with no similar

7   Washington equivalent. *See, e.g.*, *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *4 (N.D. Ill.

8   Mar. 30, 2022) (rejecting Amazon's bid to enforce its Washington choice of law clause and

9   applying Illinois' Biometric Information Privacy Act ("BIPA")); *Vance v. Amazon.com Inc.*, 534 F.

10  Supp. 3d 1314, 1328 (W.D. Wash. 2021) (rejecting Amazon's choice of law arguments and

11  applying Illinois BIPA and unjust enrichment law over Washington law); *Rivera v. Amazon Web*

12  *Servs., Inc.*, 2023 WL 4761481, at *1 (W.D. Wash. July 26, 2023) (applying Illinois BIPA);

13  *Mayhall v. Amazon Web Servs. Inc.*, 2024 WL 3842563, at *4 (W.D. Wash. May 29, 2024) (same).

14         The Digital Property Rights Transparency Law here is more analogous to the Illinois BIPA

15  cases where Amazon's choice of law clause was overcome than the California anti-wiretapping

16  cases where it was not. Whereas in the anti-wiretapping context, courts noted that Washington had

17  arguably the strongest anti-wiretapping laws in the nation, in the BIPA context, they noted that,

18  "the key difference between the two [states'] statutes is that the Washington statute does not create

19  a private cause of action." *Hogan*, 2022 WL 952763, at *4. So *Hogan* applied the Illinois statute to

20  Amazon because "Washington law would rob Plaintiffs of control over their individual biometric

21  information, instead leaving it to Washington's attorney general to bring suit." *Id*. So too in *Vance*,

22  the court found that "[a]lthough applying Washington unjust enrichment law would not cause

23  Illinois to suffer 'a complete negation of its biometric privacy protections,' the court concludes that

24  applying Washington law would cause Illinois to suffer greater impairment of its policies than if

25  the other state's law is applied." 534 F. Supp. 3d at 1328. Again, the same is true here. While

26  Washington has general laws prohibiting false advertising, it has no specific provisions requiring

27  either an "affirmative acknowledgment" from consumers or providing a "clear and conspicuous"

28

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

1   and "distinct and separate" license disclaimer. The California legislature *mandated* these very same

2   provisions because they viewed them as critical in "ensuring that consumers have a full

3   understanding of exactly what they have bought." California Bill Analysis, A.B. 2426 Assem.,

4   8/23/2024. Applying Washington law effectively nullifies those requirements. So California would

5   "suffer greater impairment of its policies," if they are not applied. *Vance*, 534 F. Supp. 3d at 1328.

　　　　2.   California Has A Materially Greater Interest In Protecting *Its*
　　　　　　Consumers From Misleading Sales Practices.

　　　When an out-of-state corporation sells to California consumers online, "California has a

7   materially greater interest based on the fact that California residents are invoking California

8   consumer protection laws to seek recovery." *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061,

9   1069 (N.D. Cal. 2007), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (invalidating choice of law clause);

10  *accord Douglas v. United States Dist. Court Cent. Dist. Cal.*, 495 F.3d 1062, 1067 n.2 (9th Cir.

11  2007) (same); *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1361-62 (N.D. Cal. 2007)

12  (same). And in *O'Brien*, *supra*, 90 Wash. 2d at 686, the Washington Supreme Court has reached the

13  same conclusion in the mirror image scenario. There, an out-of-state business allegedly charged

14  interest rates deemed usurious under Washington law and sought to enforce a New York choice of

15  law clause. *Id*. at 833. The court held that "unquestionably the State of Washington has a materially

16  greater interest in the welfare of its citizens and the impact the decision in this case will have upon

17  them than does the State of New York." *Id*. at 833-34. The same is true here. California has a

18  greater interest than Washington in "ensur[ing] consumers know what they are getting in these

19  transactions." California Bill Analysis, A.B. 2426 Assem., 6/25/2024.

　　　　3.   California Has The Most Significant Relationship To The
　　　　　　Transaction

　　　Finally, California has the most significant relationship to this dispute because it involves

23  sales of videos to California consumers. Here, as in *Vance*, "[a]side from Amazon's headquarters,

24  the allegations largely do not concern Washington." 534 F. Supp. 3d at 1327 ("conclud[ing] that

25  Illinois has the most significant relationship" to an unjust enrichment claim brought by Illinois

---

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

residents).[2] Under Restatement § 188, courts evaluate five factors: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *O'Brien*, 586 P.2d at 834 (citing Restatement (Second) of Conflict of Laws § 188(2) (1971)). For online transactions, factors (a), (b), and (e) are all neutral. But factors (c) and (d) both favor California: the contract was performed in California (where plaintiff watched the video), and the subject matter of the contract (plaintiff's viewing experience) was also in California. Compl. ¶ 5. Likewise in *Vance*, in determining Illinois had the most significant relationship to the dispute, the Court found it "particular[ly] significan[t] [that] the place of the benefiting act and the grouping of Plaintiff['s] domicile, residence and Amazon's business" were all in Illinois. 534 F. Supp. 3d at 1327. In this case, all factors point to California. As another court held in *Delman v. J. Crew Grp., Inc.*, 2017 WL 3048657, at *9 (C.D. Cal. May 15, 2017), the Section 188 factors favored the application of California law where a Californian purchased goods from a New York company website:

> the contract was performed (*i.e.*, the goods were delivered) in California, where Plaintiff and any other potential class member resides. Any damages would be paid and any restitution would be made to Plaintiff and other class members in California, and thus any injury was felt exclusively in California. Recognizing this, all of Plaintiff's statutory claims are premised on California law. … Therefore, the Court concludes that California's notice statute governs.

*Id*. at *9.

The same reasoning equally applies here, and California law and its heightened disclosure requirements should apply to Plaintiff's purchase of videos from Defendant's website.

## C.    Reingold States A Claim Under California Law

### 1.    Amazon Did Not Comply With The Digital Property Rights Transparency Law

---

[2] In *Vance*, the court applied Restatement Section 221 for the "most significant relationship" test because "§ 221 governs restitution claims, such as Plaintiffs' unjust enrichment claim." 534 F. Supp. 3d at 1325. Here, however, because Amazon has sought to enforce its contractual choice of law clause, Section 188 would apply.

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

11

1    Contrary to Amazon's arguments, its fine print disclaimer does not comply with the

2    California's Digital Rights Transparency Law. The law's default rule makes it "unlawful for a

3    seller of a digital good to advertise or offer for sale a digital good to a purchaser with the terms

4    'buy,' 'purchase,'" unless it meets one of two exceptions. CBPC § 17500.6(b)(1). Amazon

5    concedes it sold digital videos with the term "Buy," and does not argue it complied with the first

6    exception. Instead, it argues it complied with the second, "clear and conspicuous statement"

7    exception. MTD at 17. But Amazon's argument fails before it even begins because its motion

8    completely ignores CPBC § 17500.6(b)(2).

9    **Amazon's Statement Was Not Distinct And Separate.**

10    Amazon's motion exclusively focuses on whether its disclosure is "clear and conspicuous,"

11    but ignores a separate statutory requirement. Section 17500.6(b)(2) provides that any disclaimer

12    "shall be *distinct and separate* from any other terms and conditions of the transaction." (Emphasis

13    added). Amazon's disclaimer fails that test. It appears in the same text block that says: "you agree

14    [the video purchase] won't be refundable if the video is watched or downloaded." This is a refund

15    term—precisely the kind of "other terms and conditions" that must be separated from the license

16    disclosure. By bundling them together, Amazon violated § 17500.6(b)(2). Worse still, the text

17    block adds that consumers also "AGREE TO OUR TERMS AT PRIMEVIDEO.COM/TERMS."

18    Yet those general terms span a variety of other topics, like "geographic variability" in content

19    provided, "payment methods" and "cancellations" rules, "promotional trials," a "reservation of

20    rights," and the like. *See* ECF No. 14-2. A cropped and enlarged image of this text block and its

21    bundled terms from Figure 3 of the Complaint is reproduced below.

22    

23    As another court noted in interpreting similar provision, where a law requires "consent [to]

24    be 'in a form *distinct and separate* from any form setting forth other legal or financial obligations

25    of the consumer,'" a defendant must "obtain the act of consent separately from the consumer's

26    agreement to the retailer's terms of use … and the commercial terms of the purchase." *Cappello v.*

27    *Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) (emphasis in original) (citing

28    

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

12

statute). And a separate and distinct statement means "a separate stand-alone consent form … dedicated *solely* to informing" of that topic "and no other … topic." *Id.* (emphasis in the original).

Amazon's failure to adhere to this requirement is not a minor technical violation. Bundling the license disclaimer with other terms *undermines* its effectiveness—consumers may read the first portion and skip the rest, or may process the entire block as fine print without focusing on the license disclaimer. When passing the California law at issue here, lawmakers noted that "[i]n order to ensure consumers are adequately put on notice in these transactions, the … statement above must be separate and distinct from any other terms and conditions of the transaction." California Bill Analysis, A.B. 2426 Assem., 6/25/2024. Amazon's failure to satisfy the "distinct and separate" requirement is thus independent grounds for denying its motion to dismiss.

### **The Bundled Statement Is Also Not Clear And Conspicuous.**

Even assuming this bundled statement did satisfy the "distinct and separate" requirement, it is not clear and conspicuous. For a license disclaimer to be "clear and conspicuous," Amazon must design its website to "clearly call[] attention to the language." California Bus. & Prof. Code § 17500.6(a)(1). Here it did not. Instead, the license disclaimer language appears on the very smallest size text on the entire screen, and is buried far below the much larger and relevant "Confirm purchase" and "Buy movie" button consumers look for and click. *See* Compl., Figure 3 (reproduced below, showing TV screen).



OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

13

California's Digital Rights Transparency Law identifies several design elements which are likely to be "clear and conspicuous." CBPC § 17500.6(a)(1). Principal among these was making the warning "in larger type than the surrounding text." *Id*. Here, Amazon did the very opposite: it formatted its license disclaimer "is in the smallest size font on the entire screen," Compl. ¶ 26, about a third the size of the "Confirm purchase" language and half the size of the "Buy movie" button. *See* Figure 3.

Nor does the "license" disclaimer stand out from the rest of the text surrounding it. The other design elements Section 17500.6(a)(1) suggests using are "contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks." Again, Amazon utilizes none of those.

Amazon's license disclaimer is no better on a computer's web browser. *See* Figure 6.



"The disclaimer is again located below the options to 'Buy movie' or 'cancel' and is again in font smaller than any other font on the screen. Worse still, during this entire time, rolling clips of the movie selected play in the background, which further distract the user from the critical text disclosing the limited property interest being conveyed." Compl. ¶ 33.

While there is no case law interpreting "clear and conspicuous" under this new statute, California courts have interpreted the same term in other California disclosure statutes. In *Sellers v.*

---

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

1    *JustAnswer LLC*, 73 Cal. App. 5th 444, 479 (2021), for example, the California Court of Appeals

2    held a defendant failed to provide "clear and conspicuous" notice of an automatically renewing

3    subscription under California's Automatic Renewal Law. This law also "defined 'clear and

4    conspicuous' to mean 'in *larger type* than the surrounding text, or in contrasting type, font, or color

5    to the surrounding text *of the same size*, or set off from the surrounding text *of the same size* by

6    symbols or other marks, in a manner that clearly calls attention to the language.'" *Id*. (quoting

7    CBPC § 17601(c)) (emphasis added). Under this framework, the Court found the following image

8    did not give "clear and conspicuous" notice of the text "try 7 days for just $5. Then $46/month."

9    *See id.* at 455 (showing screen as it appeared "on a mobile device," reproduced below).

10

11

12    

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    OPPOSITION TO MOTION TO DISMISS
     CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

And *see id.* at 454 (showing screen "on a desktop or laptop computer," reproduced below).



*Sellers* is directly on point. There, the court held that disclosure text was not "clear and conspicuous" even though it appeared on the same screen as the purchase button, because "the text appears below the white payment box, outside the user's primary area of focus." 73 Cal. App. 5th at 479. Amazon's disclaimer suffers from the same defect—it is located far below the "Buy movie" button, outside the consumer's primary area of focus. The same was true in *Farmer v. BarkBox, Inc.*, 2023 WL 8522984, at *4 (C.D. Cal. Oct. 6, 2023) where the court held that the text "BarkBox's plans "automatically renew" was not "clear and conspicuous" under the ARL. *See id.* at *4 (reproduced below).

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

16

The court in *Farmer* found that this notice does not "plainly satisf[y] the ARL's 'clear and conspicuous' standard as to support dismissal of Plaintiff's claims at this early stage of the litigation." *Id*. While "the user is explicitly informed that BarkBox's plans 'automatically renew,' … the message is printed in text that is smaller and lighter in color than all other information on the page, and it does not in any other way call attention to itself." *Id*.

Amazon's license disclaimer is *less* conspicuous than disclosures found inadequate in *Sellers* and *Farmer*. Amazon's font size here is much smaller than the font size of the disclaimers in *Sellers*. And on the TV screen, Amazon's disclaimer is buried at the bottom of screen, far away from the Confirm purchase title and the Buy movie button, meaning it too is "outside the user's primary area of focus." *Sellers*, 73 Cal. App. 5th at 479. And like in the disclaimer in *Farmer*, likewise here, the "text that is smaller … than all other information on the page." 2023 WL 8522984, at *4. Worse still, while the disclaimer in *Farmer* is placed directly above the Continue button, here, as noted, on the TV screen, it is placed away from the user's primary area of focus.

The disclaimer on the web browser screen fares no better. While the disclaimer is closer to the Buy movie button on the web browser than it is on the TV screen, the web browser screen is more distracting because "rolling clips of the movie selected play in the background." Compl. ¶ 33. *Edwards v. MUBI, Inc*., 773 F. Supp. 3d 868, 882 (N.D. Cal. 2025) is also instructive. There, the court held that notice was "not reasonably conspicuous" even though it appeared directly below the "GET STARTED" button—because a "dynamic background of rolling movie clips" "'naturally direct[ ] the user's attentions everywhere else… away from the barely readable critical text.'" *Id.* at 883. *See id.* at 887, App'x (screenshot reproduced below).

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

17

1



9       Worse still, here, "[t]he context during which this disclaimer appears further undermines

10   the conspicuousness of notice." Compl. ¶ 27. As *Sellers* noted, "the full context of the transaction

11   is critical to determining whether a given textual notice is sufficient." 73 Cal. App. 5th at 477.

12   *Sellers* noted that in cases where "a consumer signing up for an ongoing account … it is reasonable

13   to expect that the typical consumer in that type of transaction contemplates entering into a

14   continuing, forward-looking relationship." *Id*. at 471. But in cases like this one, which involve "the

15   sale of a single item, … most consumers would not expect to be bound by contractual terms." *Id*. at

16   465. "That in turn means that the conspicuousness of these sites' textual notices must undergo the

17   most rigorous scrutiny, because a reasonably prudent user would not have been on the lookout for

18   fine print." *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 868 (9th Cir. 2022) (Baker, J.,

19   concurring) (discussing *Sellers*); *accord Chabolla v. ClassPass, Inc.*, 129 F.4th 1147, 1157 (9th

20   Cir. 2025) (same).

21       In determining conspicuousness, "the visual aspects of every page of a multi-page

22   transaction should be considered together." *Chabolla*, 129 F.4th at 1155. Here, the multi-page flow

23   further undermines conspicuousness because it "appears [for the first and only time] at the very last

24   stage of the transaction, after the consumer has already clicked 'Buy' on the first page in Figure 1,

25   entered their account pin on the second page in Figure 2, and then reached the Confirm Purchase

26   page on Figure 3. By the time they reach this page, they are not expecting to learn about any new

27

28

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

material terms; they are expected to 'confirm' the 'purchase' of the digital good they already were

repeatedly told they were buying outright." Compl. ¶ 27. "And by breaking up its purchase flow

into multiple steps, Amazon further undermines the conspicuousness of this fine print disclaimer.

By breaking up its purchase flow into three pages instead of one, Amazon is better able to conceal

its inconspicuous terms." *Id*. at ¶ 28. Indeed, in *Wilson v. Huuuge, Inc*., 944 F.3d 1212, 1221 (9th

Cir. 2019), the court held that courts are unlikely to enforce terms when "the user is required to

take multiple steps" just to find them.  Amazon's MTD, in contrast, does not include any case law

analyzing "clear and conspicuous" notice under any statute—let alone reasonably conspicuous

notice in other cases—even though Plaintiff's own complaint included several paragraphs of

analysis. *See* Compl. ¶¶ 25-28 and 33. Amazon's inability or unwillingness to grapple with—let

alone acknowledge—these contrary authorities is a tacit admission that its argument lacks merit.

### 2. Because Amazon violated the Digital Rights Transparency Law, Plaintiff states a UCL Claim

Here, Amazon has committed an unlawful act sufficient to state a UCL claim because it

violated CBPC § 17500.6. "A business practice is 'unlawful,' in violation of the California Unfair

Competition Law (UCL), if it violates another state or federal law; the UCL 'borrows' violations of

other laws and treats them as independently actionable." *Penermon v. Wells Fargo Bank, N.A.*, 47

F. Supp. 3d 982, 1002 (N.D. Cal. 2014).

The UCL prohibits "*any* unlawful, unfair *or* fraudulent business act or practice." Cal. Bus.

& Prof.Code § 17200 (emphases added). "Because the statute is written in the disjunctive, …

[e]ach prong of the UCL is a separate and distinct theory of liability; thus, [each] prong offers an

independent basis for relief." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir.

2007). So the Court need not reach Amazon's argument that its conduct is not "unfair." MTD at 22.

### 3. Amazon's "Buy movie" Button Is A Misrepresentation, And Plaintiff Reasonably Relied On It

Amazon next argues Plaintiff's "claims must also be dismissed because she fails to identify

any specific misrepresentation … or that a reasonable consumer could have possibly been misled

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

19

under the circumstances." MTD at 18. Not so. The "specific misrepresentation" here is Amazon's use of the terms "'buy' or 'purchase'" when they are, in fact, only selling a "'non-exclusive, nontransferable, non-sublicensable, limited license' to access the digital audiovisual work" on its Amazon Prime Video platform. Compl. ¶ 1. This misleads consumers like Plaintiff into "belie[ving] that they owned the[] [movies] outright." Compl. ¶ 55.

Amazon calls Plaintiff's theory "utterly implausible." MTD at 19. This Court[3] and California legislature reached the opposite conclusion. The Digital Rights Transparency Law expressly says "the terms 'buy,' [or] 'purchase,'" are ones "which a reasonable person would understand to confer an unrestricted ownership interest in the digital good." CPBC § 17500.6(b)(1). So while in the past Amazon's lawyers may have had some runway under California law to make these arguments, after the law's passage on January 1, 2025, these arguments are foreclosed.

Amazon relatedly argues that Plaintiff "has not plausibly pled reliance" on its misleading "Buy movie" button. MTD at 21. This too, is foreclosed by passage of the Digital Property Rights Transparency Law. Under California law, "an inference[] of reliance arises wherever there is a showing that a misrepresentation was material." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). And "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts *must* defer to that determination." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (emphasis added).

*Mansfield v. StockX LLC*, ---F. Supp.3d ----, 2025 WL 2811791, at *7 (N.D. Cal. Oct. 3, 2025) is instructive on this point. There, the defendant argued a plaintiff did not plausibly pled reliance where it a defendant committed "drip pricing," which refers to "'advertising products at artificially low headline price[s] and then disclosing additional charges later in the buying process.'" *Id*. at *1. "To address these concerns, California recently amended the CLRA to directly

---

[3] *See In re Amazon Prime Video Litig.*, No. 2:22-CV-00401-RSM, 2024 WL 1138906, at *3 (W.D. Wash. Mar. 15, 2024); *see also McTyere v. Apple, Inc.*, 663 F. Supp. 3d 247, 255 (W.D.N.Y. 2023); *Andino v. Apple, Inc.*, 2021 WL 1549667, at *4 (E.D. Cal. Apr. 20, 2021).

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

20

prohibit drip pricing." *Id*. And so this recent amendment "permit[ed] a presumption of reliance." *Id*. at *7. "[T]he California Legislature barred the practice based on its determination that the practice *often* misleads consumers." *Id*. (emphasis added). And so the defendant's drip pricing "constituted a material misrepresentation," from which the court would "presume, or at least infer, reliance. *Id*. (cleaned up) (citations omitted).

The same reasoning applies here. California's recently passed the Digital Rights Transparency law "based on its determination that the practice" of telling consumers they are buying or purchasing digital goods "often misleads consumers" into believing they own the digital goods outright. *Mansfield*, 2025 WL 2811791, at *7. And so its decision to ban the practice reflects its belief that the misrepresentation is material, from which this Court can infer reliance. *See id.* Amazon asserts that Plaintiff "has not alleged that she relied on any misrepresentation or omission before making her purchase." MTD at 22. This is untrue. Paragraph 69 of the Complaint expressly alleges that "Plaintiff and other members of the Class … relied on Defendant's statements and omissions to their detriment" "when they paid for their digital goods." Compl. ¶ 69.

And contrary to Amazon's characterization, Plaintiff's Complaint is not trying to "circumvent the reliance requirement by simply pointing to a regulation or code provision." MTD at 22 (citing *Thomas v. Costco Wholesale Corp*., 2014 WL 1323192, at *7 (N.D. Cal. Mar. 31, 2014)). Rather, the Complaint contextually explains why it would be reasonable for a  consumer to *rely* on the word "Buy" by analogizing it to the purchase of a physical DVD:

> In the old days, when consumers "bought" something, they could reasonably assume they would obtain the full 'bundle of sticks' we commonly know as property ownership. In other words, if a consumer walked into a brick-and-mortar video store and "bought" a physical VHS tape, they knew it was theirs to keep. Consumers could rest reasonably assured that they could place the VHS tape on their shelf and they could retrieve it whenever they wanted. If after a few years, they wanted to watch an old movie they purchased, they could place the tape in the VHS player, and it would play.
>
> However, nowadays, with digital goods, that is no longer a given. Many digital good providers that "sell" digital goods do not actually transfer full 'bundle of sticks.' Instead, they only grant licenses to access the digital content, which may or may not be revoked.

Compl. ¶¶ 10-11.

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

21

1   Moreover, the Complaint does not simply say that Amazon's fine print license disclaimer

2   technically violates the Digital Rights Transparency Law. Rather, the Complaint includes over a

3   dozen paragraphs that walk through Amazon's entire purchase flow on both a smart TV and a

4   website browser, analyze its conspicuousness, and explains why "at no point prior to the purchase

5   is the consumer ever put on notice, in plain language, that the audiovisual work he or she is buying

6   is just a license that can be revoked at any time." Compl. ¶¶ 21-35.

7   4.   Amazon's Digital Videos Qualify As "Goods" or "Services"

8   Amazon argues digital videos fall outside the CLRA because they are neither "goods" nor

9   "services." MTD at 23. Both arguments fail. While courts are divided on whether digital content

10   constitutes "goods," there is clear authority that video streaming qualifies as a "service"—

11   including Amazon's own Terms of Use.

12   **Videos That Manifest On Physical Screens Constitute Goods.**

13   California courts are split on whether online software (including videos and video games)

14   constitute "goods" under the CLRA, with courts on both sides of debate acknowledging "the issue

15   presents a very close call." *Haskins v. Symantec Corp.*, 2013 WL 6234610, at *10 (N.D. Cal. Dec.

16   2, 2013) (quoting *Ferrington v. McAfee, Inc.,* 2010 WL 3910169, at * 18–19 (N.D. Cal. Oct. 5,

17   2010)).

18   The CLRA defines "goods" to mean "tangible chattels." Cal. Civ. Code § 1761(a). Courts

19   interpreting this term recognize that the word "'tangible' means '[h]aving or *possessing physical*

20   *form*; corporeal.'" *Haskins v. Symantec Corp.*, 2013 WL 6234610, at *9 (N.D. Cal. Dec. 2, 2013)

21   (citing Black's Law Dictionary (9th ed. 2009)) (emphasis added). Under this definition, digital

22   content that manifest on a physical screen can qualify as tangible. For example, the Court in *Haskin*

23   held that anti-virus software which was available online was tangible chattel because "no matter

24   how the software is delivered, it works a physical change on a physical hard drive." 2013 WL

25   6234610, at *9. The same is true here. Amazon's digital movies are tangible because they

26   "possess[] physical form" when they take shape on a person's smart TV or computer. *Accord*

27   *Perrine v. Sega of Am., Inc.*, 2013 WL 6328489, at *4 (N.D. Cal. Oct. 3, 2013) (following *Haskins*

28

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

and holding a video game was a good); *Ladore v. Sony Computer Entm't Am., LLC*, 75 F.Supp.3d 1065, 1073 (N.D. Cal. 2014) (agreeing with *Haskins* but noting its case was easier because the video game was not downloaded but bought on a physical discs).

This line of cases highlights that the legislative history of the CLRA's goods or services language "dates from 1970." *Haskins*, 2013 WL 6234610, at *9. As such, they find it "unlikely that the Legislature knowingly exempted computer software from the CLRA's scope two years before the invention of Pong. More probably, the purpose of the language was to exempt commodities such as credit or insurance from the CLRA's scope, since those commodities are inherently intangible promises which have no direct and concrete impact on the physical universe." *Id*. They also note that a contrary rule would produce anomalous results, because most software—Amazon's videos included—can "often [be] purchased in physical form." *Id*. And so where, as here, "the same software can be purchased both in a store and online, construing the statute to exempt only the version purchased online would not be a liberal construction consistent with the CLRA's purposes." *Id*. at *10.

### Amazon's Own Authority Says Its Streaming Video Platform Could Qualify As A "Service" Under CLRA.

While the tangible "goods" question is closely contested, the "services" question is not. Amazon's lead case undercuts its position. In *Woulfe*, the court acknowledge "the video streaming services provided by Amazon" "could be interpreted as a provision of video streaming services." 2022 WL 18216089, at *15.

The court only dismissed the CLRA because the plaintiff sued *Universal City Studios* (movie producer) for its editing of the film, *not Amazon* for its streaming service. *Id*. at *1 and *15. Here, in contrast, Plaintiff sued Amazon *Services* LLC directly for its streaming service. Indeed,

**1. THE SERVICE**

Amazon Prime Video (the "Service") is a personalized service that offers, recommends and helps you discover digital movies, television shows and other video content (collectively, "Digital Content") and other services as provided in this Agreement. There are several ways to access the Service and Digital Content, including through Amazon Prime and your use of other Prime benefits and Amazon services are governed by separate terms made available in the apps, websites or devices you use to access those services. If you are under 18 years of age, or the age of majority in your location, you may use the Service only with involvement of a parent or guardian. We personalize content and features as part of the

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

23

Amazon Prime Video's own Terms of Use refers to the streaming of movies as a "service." *See* ECF No. 14-2 (reproduced below).

Other courts likewise hold that online video games constitute "services" under the CLRA. In *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1263 (N.D. Cal. 2022), the court held that an online video game constituted an "online entertainment service" under the CLRA. Indeed, that multiple courts have even held that "when a consumer buys in-game currency [to buy avatars in the video game]," that would still constitute "service" under CLRA because "she is engaging with the online entertainment service in one of the key ways consumers are intended to." *Doe*, 602 F. Supp. 3d at 1264; *accord Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650, at *13 (C.D. Cal. May 24, 2023) (same). Indeed, courts have even held that the maintenance of an online email account constituted a service under the CLRA. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1141-42 (N.D. Cal. 2018).

None of Amazon's cited cases hold otherwise. As noted, in *Woulfe*, the plaintiff's claim was against Universal for its editing of a film to remove an actress from the final cut. *Id*. at *1. Here, in contrast, Plaintiff's CLRA claim directly relates to *Amazon's* streaming service and that Amazon falsely represented it the service "confer[ing] or involve[ing] rights … that it does not have." Compl. ¶ 85. In the other video case Amazon relies on, *Lazebnik v. Apple Inc.*, 2014 WL 4275009, n.1 (N.D. Cal. Aug. 29, 2014), the court expressly noted that "Plaintiff does not argue that the Season Pass [of videos] is a 'service,'" and as such did not address the issue.

The only other case Amazon cites, *Pearl v. Coinbase Glob., Inc.*, 2024 WL 3416505, at *5 (N.D. Cal. July 15, 2024), did not involve videos at all, but the "sale of cryptocurrency." The Court held that this digital currency was an "intangible good" and that, even though it could be used to purchase "ancillary service," that was not "the purpose of the transaction." *Id*. Here, in contrast, the video streaming service is provided by Amazon is not "ancillary." Indeed, the whole point of why consumers buy videos is so they can stream them on their televisions.

## IV.    CONCLUSION

For the foregoing reasons, Amazon's Motion to Dismiss should be denied.

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396

24

The undersigned certifies that this motion contains 8,210 words, in compliance with the Local Civil Rules.

Dated: January 2, 2026                    Presented by:

                                          **CARSON NOEL PLLC**

                                          By:___*/s/ Wright A. Noel*___
                                                  Wright A. Noel

                                          Wright A. Noel (WSBA No. 25264)
                                          wright@carsonnoel.com
                                          20 Sixth Avenue NE
                                          Issaquah, WA 98027
                                          Tel:  425.837.4717
                                          Fax:  425.837.5396

                                          **BURSOR & FISHER, P.A.**
                                          Stefan Bogdanovich*
                                          sbogdanovich@bursor.com
                                          1990 N. California Blvd., 9th Floor
                                          Walnut Creek, CA 94596
                                          Tel:  925.300.4455
                                          Fax:  925.407.2700

                                          Philip L. Fraietta*
                                          pfraietta@bursor.com
                                          50 Main Street, Suite 475
                                          White Plains, NY 10606
                                          Tel:  914.874.0710
                                          Fax:  914.206.3656

                                          *Attorneys for Plaintiff*

                                          ** Pro Hac Vice*

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:25-CV-01601-RSM

**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel. (425) 395-7787 Fax (425) 837-5396